Filed 7/15/26  Vanowen Real Estate Partners v. Global Alarm Protection CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| VANOWEN REAL ESTATE PARTNERS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>GLOBAL ALARM PROTECTION et al.,<br><br>Defendants and Respondents. | B324647 c/w B328220<br><br>(Los Angeles County Super. Ct. No. BC637442) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maurice A. Leiter, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Joe R. Abramson for Plaintiff and Appellant.

Call & Jensen, Melinda Evans; Sultzer & Lipari, Joseph Lipari and Jeremy Francis for Defendant and Respondent Security Systems, Inc.

Tillotson Johnson & Patton and Jeffrey M. Tillotson for Defendants and Respondents Global Alarm Protection, Lali Fizli, and Maritza Aguilar.

No appearance for Defendant and Respondent Santos Alvaro Menjivar.

_____

**INTRODUCTION**

Global Alarm Protection (Global) entered into separate contracts with Vanowen Real Estate Partners (Vanowen) and Security Systems, Inc., dba Safe Home (SSI).  Vanowen sued Global and SSI for, among other things, breach of contract.  After a bench trial, the court found in favor of Vanowen against Global but found Vanowen had failed to prove its causes of action against SSI.

Vanowen appealed from the judgment, contending the trial court erred when it awarded Global certain contractual bonus amounts owed to Global by SSI but which Global assigned to Vanowen.  Vanowen also contends it is entitled to recover its costs and attorney fees from SSI as the prevailing party.  We affirm the judgment relating to the claims between Vanowen and SSI.

In the same judgment, the trial court also resolved claims between Vanowen and Global, from which Global filed a cross-appeal.  While this appeal was pending, Vanowen and Global's principals reached a stipulated settlement while the claims between Global and Vanowen were resolved in bankruptcy court.  Fulfilling a condition of the settlement, Vanowen filed a motion for a stipulated reversal.  We accept the parties' stipulation, and

2

remand with directions for the trial court to award additional prejudgment interest and attorney fees as provided by the stipulation between Vanowen and Global's principals. Accordingly, we affirm in part, reverse in part, and remand to the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Global is a California corporation that sold and installed alarm systems to residential and commercial customers. Maritza Aguilar and Louis Fizli are the CEO and COO of Global, respectively. SSI is a Connecticut corporation that provides monitoring and other services for alarm systems and does business in the State of California. Vanowen is a real estate investor and lender based in California. Its general partners are George Kalman and Allan E. Wolf, Jr. Between 2014 and 2016, Global entered into contracts with SSI and Vanowen as follows.

A. *The Dealer Agreement*

Global sold security alarm packages which included the sale and installation of the equipment and alarm monitoring services for three to five years. Customers paid a monthly fee for the monitoring services. Rather than provide the monitoring services itself, Global entered into a dealer agreement with a third party, known as a funding source, under which the funding source purchased Global's customer contracts and the associated stream of revenue (i.e., the monthly fees), while it provided the monthly monitoring services. Before Global's contract with SSI in 2014, Global had a dealer agreement with Guardian Protective Services.

3

In July 2014, Global and SSI entered into an informal dealer agreement under which Global sold its alarm contracts to SSI. The dealer agreement between them was reduced to a writing on December 18, 2014. The parties agreed that Connecticut law governed the dealer agreement. Relevant to this appeal, paragraph 3 of the dealer agreement provided that SSI would pay Global "the Purchase Price, minus the Holdback Amount" for each customer contract. The holdback amount, set at 8 percent of the purchase price of each contract, insulated SSI from defaults on the contracts. Global guaranteed that each alarm contract it sold would be free from default for one year (the guarantee period). Customers typically defaulted by failing to pay their monthly monitoring fee, having excessive false alarms, or accomplishing "other abuse" of the account. If the customer did not default during the guarantee period, SSI was required to remit the holdback amount to Global within 30 days after expiration of the guarantee period. In cases of default, SSI could return the contract to Global by using money from the holdback fund (comprised of all holdback amounts that had not yet been returned to Global) to essentially receive a refund.

The dealer agreement also contained a backend bonus provision under which SSI paid Global bonuses depending on the number of alarm contracts it sold to SSI. Section 3(d) of the dealer agreement allowed Global "the right to fully assign all rights and privileges to any and all Holdback Amount to a third party." Section 14(b) otherwise limited the assignment of the dealer agreement: "Except as to Sections 3(d) and 14(c) of this

4

Agreement, Dealer may not assign this Agreement."[1]
Section 14(e) also provided: "This Agreement may only be amended by the mutual agreement of the parties."

The dealer agreement between SSI and Global was terminated on July 26, 2016.

B.     *The Assignment Agreement*

Kalman, one of Vanowen's general partners, met Fizli, Global's COO, through Kalman's uncle.  In 2012, Kalman personally loaned $50,000 to Fizli's company, Global Alarm Solutions (GAS), the predecessor entity to Global.

In 2014, Vanowen purchased holdbacks from GAS arising from GAS's sale of its customer accounts to Guardian Protective Services.  In short, Vanowen purchased at a discount the future stream of income arising from the remittance of holdbacks to GAS after the guarantee period expired.  Between April and July 2014, Vanowen paid GAS $114,382.74 for $142,978.43 in holdback amounts that would be paid to GAS by Guardian after the guarantee period expired.

In July 2014, Fizli told Kalman that he and Aguilar intended to form a new security alarm company, Global, to sell customer accounts to SSI.  GAS would cease to exist and Guardian Protective Services would no longer be the funding source.  The parties initially agreed to operate under an informal arrangement substantially identical to the one Vanowen had with GAS.  Vanowen purchased $667,984.88 in holdbacks SSI

---

[1]     Section 14(c) permitted Global to assign the dealer agreement to "(1) any corporation which is formed by Dealer [Global] for the purpose of this Agreement, [or] (2) any family member whether by blood or by family association."

owed to Global for $535,787.52 between August 29, 2014, and April 27, 2016.

On May 20, 2016, this arrangement was reduced to a written assignment agreement that was governed by California law.  In addition to the purchase of holdback amounts, Vanowen agreed to purchase the backend bonus stream of revenue from Global.  Paragraph 4(b) of the assignment agreement stated, "On the terms and conditions set forth herein, and only to the extent as described and set forth herein, Global hereby assigns to [Vanowen] part of its right and interest in and to the Bonus. . . . This Assignment is subject to the following additional terms and conditions: . . .  (b) [SSI] shall execute a copy of this Agreement, approving and agreeing to be bound by the terms and conditions of this paragraph 4."  Paragraph 12 of the assignment agreement further provided:  "No provision hereof may be waived unless in writing and signed by the Party against which the waiver is to be enforced."

In 2016, SSI decided it would increase the holdback amount due to the high number of defaults, which SSI was authorized to do under the dealer agreement.  Global thereafter decided to stop selling contracts to SSI.  During this time, Vanowen received some payments from Global, which it applied first to the Guardian holdbacks and then to the SSI holdbacks.  At a certain point, Global stopped paying Vanowen.

C.    *Trial Court Proceedings*

On October 18, 2016, Vanowen sued Global, Fizli, Aguilar, and SSI.[2]  Vanowen's operative complaint alleged nine causes of action: breach of contract, accounting, declaratory relief, intentional misrepresentation, negligent misrepresentation, unfair business practices, money had and received, fraudulent conveyance, and breach of oral agreement.  Global and SSI filed cross-complaints against one another alleging breach of contract and indemnity causes of action.

The parties stipulated to appoint a referee to determine certain issues.  The referee primarily conducted an accounting of the money due from SSI for holdback amounts as well as the backend bonus.  The issue of who was entitled to the holdback amounts and backend bonus, among other things, was left to the trial court.  The referee conducted an accounting over six days from June to August 2021.  The referee found the amount in the holdback fund to be $385,896.24 and the amount of the backend bonus to be $210,746.80.  The trial court adopted the referee's conclusions as to these amounts.

The court conducted an eight-day bench trial from May 16 to May 25, 2022.  It was Global's position at trial that SSI breached the dealer agreement.  Global claimed SSI owed it money for the backend bonus and the holdback fund as well as damages for other violations of the dealer agreement.  Global also argued it and Vanowen operated under an informal oral

---

[2]    In the operative second amended complaint, Vanowen added Santos Alvaro Menjivar as a defendant, alleging Aguilar fraudulently transferred property she owned to Menjivar after she was served with Vanowen's complaint.  Menjivar has not appeared in this appeal.

7

agreement that was unenforceable under the statute of frauds because it could not be performed within one year. Fizli denied signing the assignment agreement with Vanowen and asserted the signature on the assignment agreement was a forgery. Global further argued the assignment agreement failed for lack of consideration.

At trial, Kalman and his uncle testified Vanowen's assignment agreement with GAS amounted to three principal terms: (1) the purchase price for holdback accounts was 80 cents on the dollar; (2) the holdback amount would be paid to Vanowen within 12 to 13 months; and (3) if Guardian Protective Services, GAS's funding source, did not pay, GAS or Fizli would. Kalman confirmed the parties agreed to "pretty much the same terms" when SSI became the funding source. Kalman further testified he watched Fizli sign the assignment agreement on May 20, 2016, and Kalman signed the assignment agreement on behalf of Vanowen a few weeks later. Vanowen calculated it was owed $660,062 in holdback amounts. Vanowen also argued it was entitled to payment of the backend bonus from SSI pursuant to the terms of the assignment agreement.

SSI argued Global breached and repudiated the dealer agreement and was required to indemnify it. SSI further argued it was not a party to the assignment agreement between Vanowen and Global because no one from SSI ever signed that agreement and thus Vanowen had not met its burden of proof against SSI.

In its statement of decision the court found that Global had repudiated the dealer agreement with SSI by June 30, 2016. SSI had told Global by then that it would increase the holdback amount due to the high number of defaults, and Global decided to

8

stop selling any customer accounts to SSI. Applying Connecticut law, the court found that once Global repudiated the dealer agreement, SSI was not required to perform in order to enforce the contract, and Global was not entitled to demand performance. Nevertheless, Global was entitled to recover the unpaid holdback amounts and backend bonus after significant offsets of amounts owed by Global to SSI.

As between Vanowen and Global, the court found the assignment agreement to be valid. It did not find credible Fizli's claim that his signature on the assignment agreement was forged. The court found Vanowen was entitled to receive the holdback payments owed by SSI to Global. The court also found that Vanowen was not entitled to the backend bonus because that assignment was invalid for two independent reasons: (1) the dealer agreement did not allow Global to assign the rights to the backend bonus to anyone; and (2) SSI was required to, but did not, execute the assignment agreement.

The court found SSI was not liable to Global for attorney fees or costs and that SSI was not required to indemnify Global. The court awarded SSI attorney fees and costs against Global as provided by the dealer agreement.

The trial court entered judgment, in pertinent part, directing SSI to pay to Vanowen the amount of $385,896.24, the holdback amount owed to Global. The judgment further awarded to Global the backend bonus amount of $210,746.80 due to Global from SSI, which was offset by amounts Global owed to SSI. The court also subsequently awarded attorney fees and costs to Vanowen and SSI, which we discuss below.

Vanowen timely appealed from the judgment and post-judgment attorney fees award order. Global, Fizli, and Aguilar

9

filed a notice of cross-appeal from the judgment.  The appeals were consolidated.

On December 29, 2025, Vanowen advised this court that it had reached a settlement with Aguilar and Fizli.  Vanowen's claims against Global had been finally adjudicated in a separate bankruptcy court order.  Vanowen requested the entry of a partial reversal of the judgment and an award of additional prejudgment interest of $187,990.38 and post-judgment attorney fees in the sum of $28,116.81, in favor of Vanowen and against Fizli and Aguilar as well as immediate issuance of the remittitur as to that portion of the appeal involving Vanowen and Fizli and Aguilar.

## DISCUSSION

Vanowen argues the assignment agreement entitles it to the backend bonus the court awarded to Global.  It further contends it is entitled to recover costs and attorney fees from SSI as a prevailing party because the judgment required SSI to pay Vanowen a net monetary recovery.  Vanowen also seeks entry of a stipulated reversal as to its claims against Global's principals.

A.    *The Assignment of the Backend Bonus Was Invalid Because SSI Did Not Sign the Agreement*

Vanowen argues it is entitled to the backend bonus awarded to Global because Global assigned its rights to the backend bonus to Vanowen.[3]  The trial court found the

_____

[3]    As stated, Vanowen's claims against Global were adjudicated in bankruptcy court and it settled its claims against

10

assignment of the backend bonus was invalid because it was prohibited under the dealer agreement, and SSI was required to, but did not, execute the assignment agreement.

The interpretation of a written instrument is a question of law "when it is based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or when a determination was made based on incompetent evidence." (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395; accord *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1134 (*Wolf*).) Here, our analysis rests on the terms of the assignment agreement and the dealer agreement. There is also no conflict in the extrinsic evidence. Our review of this question of law is therefore de novo. (*Wolf,* at p. 1134.)

The trial court found the events leading to the assignment of the backend bonus are as follows. In 2014, Global and SSI signed the dealer agreement. Paragraph 14(b) of the dealer agreement states, "Except as to Sections 3(d) and 14(c) of this Agreement [relating to the assignment of holdback amounts and assignments to Global's successors in interest], Dealer [Global] may not assign this Agreement." Two years later, Global and Vanowen executed the assignment agreement. Vanowen included paragraph 4(b), which required SSI to "execute a copy of this Agreement approving and agreeing to be bound by the terms and conditions [in] this paragraph 4." In its reply brief, Vanowen rhetorically asks, "Why did Vanowen insert such a clause? The answer is obvious; as set forth in the final recital of the

---

Fizli and Aguilar during the pendency of this appeal. Thus, Vanowen may only recover the backend bonus from SSI.

11

Assignment Agreement (beginning on page 1 and continuing on to the top of page 2), Global was already in default of its payment obligations arising from Vanowen's purchase of the Holdback Amounts and Vanowen wanted to be sure that SSI paid the Backend Bonus to Vanowen, and **not**, to Global." Vanowen, however, concedes in its opening brief that, "Vanowen and SSI are not parties to a fully executed agreement whereby SSI promised to pay the Backend Bonus to Vanowen."

The requirement that SSI execute the assignment agreement and Vanowen's concession that SSI never executed it foreclose Vanowen's argument that it is entitled to the backend bonus. California law, which applies to the assignment agreement, makes nonassignment clauses enforceable. (See *Henkel Corp. v. Hartford Accident &Indemnity Co.* (2003) 29 Cal.4th 934, 943 [clauses requiring consent to an assignment "are generally valid and enforceable"], overruled on other grounds as stated in *Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175; *Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 910 ["With respect to an ordinary contract containing a nonassignment clause, an unconsented assignment, rather than effective until voided, is simply ineffective"]; *Benton v. Hofmann Plastering Co.* (1962) 207 Cal.App.2d 61, 68 [explicit language in contract requiring consent to an assignment was enforceable]; *Fairbanks v. Crump Irrigation & Supply Co.* (1930) 108 Cal.App. 197, 205 [provision that moneys due might be assigned by contractor with owner's written consent prevented assignment without owner's written consent].) Without SSI's consent, Global's assignment of the backend bonus to Vanowen was invalid.

12

The dealer agreement and Vanowen's concession that it needed SSI's signature in the assignment agreement further support our conclusion. It is undisputed the dealer agreement prohibited Global from assigning its backend bonus rights, and Vanowen attempted to draft around this prohibition in the assignment agreement "to be sure that SSI paid the Backend Bonus to Vanowen." But Vanowen ultimately failed to obtain SSI's consent to the assignment, which Vanowen needed in order to have any enforceable claims against SSI.

Vanowen acknowledges the assignment agreement contains a consent provision and that paragraph 4(b) of the dealer agreement prohibits general assignments, but nevertheless asserts SSI's signature was not required for the assignment to be valid, citing *Searles Valley Minerals Operations Inc. v. Ralph M. Parsons Service Co.* (2011) 191 Cal.App.4th 1394, 1402 and *California Bank & Trust v. Piedmont Operating Partnership, L.P.* (2013) 218 Cal.App.4th 1322, 1349. *Searles* and *California Bank & Trust* are distinguishable because neither involve a contract with a similar written consent requirement. Indeed, *Searles Valley* and *California Bank & Trust* merely set out "general assignment principles," presuming a valid assignment existed. (*California Bank & Trust,* at p. 1348.) As stated, the assignment here was invalid.

Vanowen further contends it could and did waive the requirement of SSI's signature because that clause only benefited Vanowen and not SSI or Global. Vanowen cites *Doryon v. Salant* (1977) 75 Cal.App.3d 706, 712 (*Doryon*) for the proposition that a " 'contracting party may waive provisions placed in a contract solely for his benefit.' " According to Vanowen, "other than whom the money was to be paid to, that clause had no adverse impact

13

upon SSI." Vanowen also asserts the assignment did not benefit Global because "Global gave up a potential direct right to payment and assigned that right to Vanowen."

*Doryon, supra,* 75 Cal.App.3d at pages 711 to 712 involved a seller's attempt to rescind a purchase contract for the sale of a home because the loan contingency was not met. The contract allowed the buyer to rescind the contract if the buyer was unable to obtain a $52,000 loan. The buyer obtained a $51,000 loan and was willing to go forward with the purchase. *Doryon* held the loan contingency was "solely" for the buyer's benefit because the "sale was, as to the sellers, a cash sale" and thus the sellers "would have had no complaint if plaintiffs had elected to forego financing altogether and to pay the purchase price with their own cash." (*Ibid.*)

*Doryon* is inapposite because Vanowen has failed to meet its burden to establish that (1) it waived the requirement that SSI consent to the assignment of the backend bonus or (2) the provision was included solely for its benefit. First, Vanowen asserts it waived the SSI signature requirement by proceeding without SSI's signature. Paragraph 12 of the assignment agreement, however, required waiver of any of its provisions to be "in writing and signed by the Party against which the waiver is to be enforced." Vanowen cites no evidence in the record that any party did so.

Nor has Vanowen demonstrated the SSI signature requirement was solely for its benefit. The uncontradicted evidence established SSI had an interest in deciding whether and to whom Global could assign its rights to the dealer agreement. Paragraph 14(b) of the dealer agreement expressly limits assignment of Global's rights to holdback amounts

14

(paragraph 3(d)) and to Global's successors and family members (paragraph 14(c)).[4]  The assignment agreement requiring SSI's consent to the assignment of the backend bonus was a natural corollary to paragraph 14(b).

Lastly, in its reply brief, Vanowen contends that paragraph 14(d) of the dealer agreement "specifically permitted the assignment of the Backend Bonus to Vanowen because Vanowen was a 'lender.' "  (Emphasis omitted.)  Not so.  Paragraph 14(d) applies only to SSI (which is identified in the dealer agreement as the "Company"):  "Subject to below, Company may assign this Agreement and the rights and obligations hereunder to its affiliates, lenders, successors and assigns."

B.    *The Trial Court Properly Determined Vanowen Was Not the Prevailing Party As Between Vanowen and SSI*

Vanowen contends it received a net monetary recovery because the judgment awarded it $385,896.24 to be paid by SSI.

---

[4]    Vanowen argues the anti-assignment provision under paragraph 14(b) of the dealer agreement is unenforceable under the Connecticut Commercial Code and Connecticut decisional authority.  Even if the anti-assignment provision in the *dealer agreement* is invalid under Connecticut law, that invalidity does not extend to the *assignment agreement*, which is governed by California law.  Paragraph 14(b) of the dealer agreement instead merely demonstrates SSI held an interest in limiting Global's ability to assign its rights under the dealer agreement without SSI's consent.

15

According to Vanowen, this means it is the prevailing party and entitled to its statutory costs and contractual attorney fees.[5]

### 1. *Additional Relevant Proceedings*

Vanowen alleged three causes of action against SSI: breach of the assignment agreement, an accounting of the holdback amount and the backend bonus, and declaratory relief as to Vanowen's right to collect the backend bonus directly from SSI.[6] Global, in turn, sued SSI for breach of the dealer agreement, contractual and equitable indemnity, and an accounting. SSI likewise sued Global for breach of contract, contractual and equitable indemnity, and fraud.

After hearing the evidence at trial and examining the three operative complaints and two contracts, the trial court made the following findings: (1) "SSI substantially complied with the dealer agreement"; (2) "Global repudiated the dealer agreement no later than June 30, 2016 . . . prior to the date SSI terminated the agreement"; (3) "[o]nce Global repudiated the dealer agreement, SSI was not required to perform in order to enforce the contract, and Global was not entitled to demand performance"; and (4) "the

---

[5] Vanowen states, "This Court's decision on whether Vanowen was the prevailing party in its claims against SSI also controls the decision on whether Vanowen was entitled to recover attorneys' fees from SSI." Because we affirm the trial court's finding that Vanowen did not prevail against SSI, we need not address Vanowen's attorney fees claim.

[6] Vanowen alleged the same three causes of action against Global, plus causes of action for intentional misrepresentation, negligent misrepresentation, unfair business practices, money had and received, and breach of oral agreement.

16

accounting causes of action address the distribution of monies from the holdback fund and backend bonus." Based on these findings, the trial court concluded that "Vanowen did not prove any of its causes of action against SSI."

The judgment awarded attorney fees and costs to SSI and Vanowen to be paid by Global in amounts to be determined. Vanowen filed a memorandum of costs in the amount of $93,153.98. Relevant to this appeal, Vanowen argued that the claims it asserted against SSI and Global were "inextricably intertwined" and requested the costs be awarded jointly and severally. Vanowen further argued it was entitled to an award of costs against SSI under Code of Civil Procedure section 1032, subdivision (a)(4) because the judgment ordered SSI to pay to Vanowen a net monetary recovery of $385,896.24. Vanowen argued the trial court lacked discretion to make any other ruling due to its status as the prevailing party. SSI moved to tax or strike Vanowen's memorandum of costs to the extent it sought costs from SSI, asserting the court found Vanowen was not a prevailing party because "Vanowen did not prove any of its [] actions against SSI."

The trial court granted SSI's motion to strike the memorandum of costs. The court reasoned SSI owed unpaid holdback amounts to Global. SSI, however, consented in the dealer agreement to allow "Global to 'fully assign all rights and privileges' to holdback payments" without SSI's authorization. Further, the assignment agreement specified "that SSI would pay holdback amounts directly to Vanowen." The court therefore ordered SSI to pay Vanowen directly, "rather than pay them to Global and have Global, in turn, transfer them to Vanowen."

17

2.	*Governing Law and Standard of Review*

Code of Civil Procedure section 1032 (section 1032) governs the award of costs in this case.  Section 1032, subdivision (b) provides:  "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."  " 'Prevailing party' " is defined as "the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant.  If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034." (Code Civ. Proc., § 1032, subd. (a)(4).)

Where there are multiple defendants who are not united in interest, each may be considered separately when determining who is the prevailing party as between the plaintiff and each defendant.  In *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265 at pages 1298 to 1299, for example, the plaintiffs lost at trial against three of four subcontractors.  *Heppler* held the trial court properly awarded statutory costs and contractual attorney fees to plaintiffs against the losing subcontractor, but that it abused its discretion when it failed to apportion those costs and attorney fees because the losing subcontractor's part of the case took up substantially less time than the others.  (*Ibid.*; see also *Oakes v. McCarthy Co.* (1968) 267 Cal.App.2d 231, 238, 256–257 [plaintiffs who obtained jury verdict against some defendants but

18

not others entitled to recover costs as a matter of course from the defendants against whom they obtained judgment]; *Gibson v. Thrifty Drug Co.* (1959) 173 Cal.App.2d 554, 556 [defendant who obtained directed verdict against plaintiff entitled to costs against plaintiff, while plaintiff who obtained jury verdict against another defendant was entitled to costs against that defendant].)

"A trial court's determination that one party in litigation was the prevailing party is reviewed for abuse of discretion." (*Arias v. Katella Townhouse Homeowners Assn., Inc.* (2005) 127 Cal.App.4th 847, 852; see *Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 94.)

3.    *Analysis*

Vanowen contends it is the "party with a net monetary recovery" because the court ordered SSI to pay Vanowen $385,896.24 plus interest.  (Code Civ. Proc., § 1032, subd. (a)(4).) As such, Vanowen argues it is a prevailing party "entitled as a matter of right to recover costs" against SSI.  (Code Civ. Proc., § 1032, subd. (b).)  According to Vanowen, it had standing to sue SSI for the holdback amounts due to Global's assignment. Therefore, "[i]t matters not whether Vanowen's claim was predicated on the legal remedy of a breach of contract (based upon the assignment of Global's contractual rights to the Holdback under the Dealer Agreement), or equitable principals [*sic*] (based upon the accounting); in either event, the net monetary recovery in favor of Vanowen and against SSI mandated an award of costs to Vanowen."

We are not persuaded.  The trial court expressly found Vanowen did not prove its three causes of action against SSI. The record supports this conclusion.  First, Vanowen alleged a

19

breach of the assignment agreement, which SSI did not sign, and it made no mention of the dealer agreement as a basis for its breach of contract claim against SSI. Even if Vanowen had sued SSI as an assignee of the dealer agreement (which it did not), it could not have prevailed on this cause of action because the court expressly found SSI did not breach the dealer agreement. Instead, it found Global repudiated the agreement and SSI was not thereafter required to perform. Second, Vanowen alleged a claim for an accounting.[7] The trial court made the following findings relating to the parties' request for an accounting: "As to the arrangements between Global and SSI. SSI owes $596,643.04. This is the total of the holdback and backend bonus due, as calculated by the Referee and adopted by the Court. . . . As between Global and Vanowen, Global, Fizli, and Aguilar jointly and severally owe to Vanowen $561,811.87. $385,896.24 of this amount will be satisfied by the holdback payments made directly to Vanowen by SSI." In short, the court found SSI owed Global a sum certain and Global, Fizli, and Aguilar jointly owed Vanowen another sum. The court, relying on the assignment agreement, ordered a portion of Vanowen's judgment against Global to be paid by SSI. The judgment ordering SSI to pay $385,896.24 directly to Vanowen is thus entirely consistent with

---

[7]    "[T]he nature of a cause of action in accounting is unique in that it is a means of discovery. An accounting is a 'species of disclosure, predicated upon the plaintiff's legal inability to determine how much money, if any, is due.' [Citation.] Thus, the purpose of the accounting is, in part, to discover what, if any, sums are owed to the plaintiff, and an accounting may be used as a discovery device." (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 180.)

the court's findings that Vanowen did not prevail in its claims against SSI and does not render Vanowen the prevailing party as against SSI.

Third, Vanowen sought declaratory relief against SSI, but that claim related only to a declaration that SSI owed it the backend bonus. As stated, the trial court correctly determined Vanowen did not prevail on that claim. Under these circumstances, the trial court did not abuse its discretion in determining Vanowen was not the prevailing party as against SSI and that it was not entitled to recover its costs against SSI.

C.    *The Settlement between Vanowen, Fizli, and Aguilar, and the Request for a Stipulated Reversal*

As stated, Vanowen challenges the amounts of prejudgment interest and postjudgment attorney fees the trial court awarded to it from Global, Fizli and Aguilar. After the appeal was fully briefed, Vanowen and these respondents settled their dispute, Vanowen entered into a stipulation with Fizli and Aguilar, and Vanowen moved for a stipulated reversal under Code of Civil Procedure section 128, subdivision (a)(8). Specifically, the stipulation seeks "[t]he entry of a partial reversal of the judgment by an award of additional prejudgment interest of $187,990.38 and post-judgment attorneys' fees in the sum of $28,116.81, in favor of Vanowen and against respondents, Mr. Fizli and Ms. Aguilar; and . . . [t]he issuance of remittitur as to that portion of the instant Appeal as between Vanowen, on the one hand, and Mr. Fizli and Ms. Aguilar, on the other hand." The stipulation does not include SSI.

21

1. *Additional relevant background*

On December 7, 2023, while this appeal was pending, Global filed for bankruptcy. On July 26, 2025, Vanowen, Global, Fizli, and Aguilar entered into a 14-page "Settlement Agreement and Mutual General Release." Vanowen was required to bring the motion for stipulated reversal as a term of the parties' settlement. According to Vanowen, "[o]ne of the principal purposes of the Settlement Agreement was to equalize the amounts owed by Global to Vanowen pursuant to Global's approved Chapter 11 Plan with the amounts owed by Global's principals, Lali Fizli and Maritza Aguilar, based upon the California Judgment." The bankruptcy court approved the settlement agreement as to Global on August 5, 2025.

On December 29, 2025, Vanowen filed a motion in this court seeking "an order approving the stipulation." The stipulation provides as follows: "(1) That the Court of Appeal shall enter its order partially reversing the Judgment which shall direct the trial court to enter a new Judgment adding additional pre-judgment . . . interest to the new judgment in favor of Vanowen and against Aguilar and Fizli (but not Global), in the sum of $187,990.38. [¶] (2) That the Court of Appeal shall enter its order directing the trial court to include in the new judgment post-judgment attorneys' fees in favor of Vanowen and against Aguilar and Fizli, in the sum of $28,116.81. [¶] (3) Except as otherwise [provided] in the Settlement Agreement and herein, Vanowen, on the one hand, and the Global parties, on the other hand, shall bear their own attorneys' fees and costs with respect to the Appeals. [¶] (4) Nothing in this stipulation shall modify or alter that portion of the pending appeal between Vanowen and respondent, Security Systems, Inc. . . . [¶] (5) That immediately

22

upon the entry of the foregoing orders, the Court of Appeal[ ] shall issue its Remittitur with respect to the appeal of the issues between Vanowen and the Global Parties."

### 2. *Analysis*

For an appellate court to accept a stipulated reversal, it must find "both of the following: [¶] (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal [and] [¶] (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." (Code Civ. Proc., § 128, subd. (a)(8)(A)–(B); accord, *Union Bank of California v. Braille Inst. of Am.* (2001) 92 Cal.App.4th 1324, 1328.)

After examining the record in this case and the parties' stipulation, we conclude the requirements of Code of Civil Procedure section 128, subdivision (a)(8), are both met. First, there is no reasonable possibility that the interests of nonparties will be adversely affected by the proposed reversal. This is a private dispute and acceptance of the stipulated reversal will not result in an erosion of public trust or reduce the incentive for pretrial settlement, and it will advance judicial economy. SSI and Menjivar, the only other defendants in this matter, were served with Vanowen's motion and did not file an objection.

Second, it is unlikely the requested reversal will result in the erosion of public trust because this court would likely reverse the prejudgment interest ruling. The motion argues the trial court erred in the amount of prejudgment interest it awarded to Vanowen "because it used an irrelevant date for the calculation of

23

prejudgment interest." Specifically, "the interest was only awarded from August 18, 2021 (the date of a Referee's Report which had nothing to do with Vanowen's separate monetary claim against the Global Parties) to the date of entry of the California Judgment, on September 16, 2022. Instead, that interest should have been calculated from the date the principal amount became liquidated and fully due and payable to Vanowen pursuant to the terms and conditions of a separate written agreement between Vanowen, on the one hand, and Global and Mr. Fizli, on the other hand. . . . Vanowen's calculation of the interest due was approximately $325,344.70, but the trial court only awarded Vanowen the sum of $102,038.32, leaving an additional amount of prejudgment interest owed to Vanowen in the sum of $223,306.38. [¶] The Court erred in determining that Vanowen's right to recover interest from the Global Defendants was controlled by the date of the Referee's Report rather than when the payments were due under the separate Assignment Agreement. . . . [¶] As a pretrial settlement in the Bankruptcy, Vanowen agreed to accept the additional sum of $187,990.38 as and for prejudgment interest, a compromise of $35,316."

We agree reversal is warranted because liability was established before the date of the referee's report. (See Civ. Code, § 3287, subd. (a); *Cheema v. L.S. Trucking, Inc.* (2019) 39 Cal.App.5th 1142, 1151 ["The trial court erroneously confused uncertainty over the *amount* of damages with uncertainty as to whether there is liability for damages in an amount that is certain. The former precludes the mandatory award of prejudgment interest under section 3287, subdivision (a), but the latter does not"]; see *Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 151 ["Damages are certain or capable of

24

being made certain by calculation, or ascertainable, for purposes of the statute if the defendant actually knows the amount of damages or could calculate that amount from information reasonably available to the defendant. [Citation.] . . . A legal dispute concerning the defendant's liability or the proper measure of damages, however, does not render damages unascertainable"].)[8]

Although we accept the settling parties' stipulated reversal, we deny the request for immediate issuance of the remittitur because SSI is not a party to the stipulation. Immediate issuance of the remittitur would cut off Vanowen's and SSI's ability to seek rehearing in this court or to file a petition for review with the Supreme Court as to the claims between them. (*Rare Coin Galleries, Inc. v. A-Mark Coin Co., Inc.* (1988) 202 Cal.App.3d 330, 336 ["the effect of the delay between the filing of the Court of Appeal opinion and the issuance of the remittitur is to afford the parties the opportunity to petition for rehearing in the Court of Appeal [], and to seek review in the Supreme Court, before appellate jurisdiction is lost"].) Accordingly, the request for immediate issuance of the remittitur is denied without prejudice to the filing of a stipulation signed by all parties or an unopposed motion to expedite issuance of remittitur as to all parties. (See Cal. Rules of Court, rule 8.272(c)(1).)

---

[8] And as to the postjudgment attorney fees, the settling parties agreed in the settlement agreement "[t]hat $28,116.81 in post-judgment attorneys' fees was reasonably incurred by Vanowen in connection with enforcement of the Judgment and the Bankruptcy and is to be added to the Judgment."

25

## DISPOSITION

The judgment is affirmed in part, reversed in part, and remanded to the trial court.  On remand, the trial court is directed to enter a new judgment reflecting an additional award of prejudgment interest in the amount of $187,990.38 and postjudgment attorney fees in the amount of $28,116.81, in favor of Vanowen and against Fizli and Aguilar.  The judgment is otherwise affirmed.  SSI may recover its costs on appeal.


MARTINEZ, P. J.

We concur:


FEUER, J.                                    STONE, J.